516 So.2d 302 (1987)
James MORRIS, Appellant,
v.
C.A. MEYER PAVING & CONSTRUCTION AND CNA Insurance Company, Appellees.
No. BS-416.
District Court of Appeal of Florida, First District.
December 1, 1987.
Rehearing Denied January 8, 1988.
*303 Michael M. O'Brien and William T. Roshko, of O'Brien & Hooper, Orlando, for appellant.
Rex A. Hurley, of Zimmerman, Shuffield, Kiser & Sutcliffe, Orlando, for appellees.
ZEHMER, Judge.
We have for review a workers' compensation order denying permanent impairment benefits for amputation based on the ruling that surgical removal of an employee's testicle consequent to a covered industrial accident does not constitute amputation within the meaning of section 440.15(3)(a), Florida Statutes (1985). Concluding that the deputy commissioner has misconstrued that section, we reverse.
The pertinent facts are simple and undisputed. As the result of a work-related accident which occurred on March 23, 1985, claimant's left testicle was surgically removed by an authorized urologist. Claimant filed a claim for permanent impairment benefits, alleging that "an orchiectomy is a surgical amputation [and] the Claimant is entitled to amputation benefits pursuant to Section 440.15 Florida Statutes." The urologist testified that claimant reached maximum medical improvement on June 12, 1985, and opined, based on the AMA Guides to the Evaluation of Permanent Impairment, that claimant had a 10% permanent impairment attributable to the loss of one testicle. He also testified that claimant suffered no functional loss in ability to perform sexually and to produce children, that claimant was not placed on any work restrictions, and that no further treatment was needed. The final order denied claimant permanent impairment benefits based on the conclusion that "the language of [§ 440.15(3)(a)(1)] does not contemplate mere loss of any body part," but was intended to be limited to the severance of a limb, citing Carr v. Central Florida Aluminum Products, Inc., 402 So.2d 565 (Fla. 1st DCA 1981).
Claimant appeals this denial, contending that no case has construed this statutory provision in the context of similar facts. He argues that section 440.15(3)(a) contains no exclusion for amputation of specific body parts, is not expressly limited to limbs, and thus is subject to the construction that an orchiectomy amounts to surgical amputation of a body part. The deputy commissioner's construction of the statute is reversible error, claimant urges, because the statute must be given an interpretation most favorable to the employee, citing Norwood Shell v. Forbing, 455 So.2d 504 (Fla. 1st DCA), pet. for rev. dismissed, 459 So.2d 1041 (Fla. 1984).
The employer and carrier contend that although claimant has lost his left testicle, he does not suffer the serious economic disabling consequences of severance of a limb as intended by the legislature, and cites Carr v. Central Florida Aluminum Products, Inc., 402 So.2d 565, for the proposition *304 that amputation must be defined as severance of a limb. The employer and carrier also rely on Rosier v. Roofing & Sheet Metal Supply Co., 41 So.2d 308 (Fla. 1949), a pre-1979 Act case in which the supreme court held that a claimant was not entitled to permanent disability compensation for removal of a testicle. Appellants further argue that to accept claimant's argument, the removal of any body part, such as removal of a herniated disc, shaving of hair for an operation, skin grafting, removal of fingernails, and other such operations, would require payment of benefits for permanent impairment due to amputation.
After carefully considering the arguments of both parties, we hold that surgical removal of claimant's testicle constitutes an amputation within the meaning of section 440.15(3)(a). That section provides:
1. In case of permanent impairment due to amputation, loss of 80 percent or more of vision of either eye, after correction, or serious facial or head disfigurement resulting from an injury other than an injury entitling the injured worker to permanent total disability benefits pursuant to subsection (1), there shall be paid to the injured worker the following:
a. Two hundred and fifty dollars for each percent of permanent impairment of the body as a whole from 1 percent through 10 percent.
Permanent impairment is defined in section 440.02(16) as "any anatomic or functional abnormality or loss, existing after the date of maximum medical improvement, which results from the injury."
The term "amputation" is not defined in the statute, so we must look to its generally accepted meaning. Doubtlessly the word is most often used in referring to severance or removal of a limb or portion thereof, but both medical and standard English dictionaries indicate that the word has a broader meaning and is generally defined as the "surgical removal of a diseased member, part, or organ." Tabers' Cyclopedic Medical Dictionary, p. A-49 (11th ed. 1970). See also Dorland's Illustrated Medical Dictionary, p. 62 (26th ed. 1985) ("the removal of a limb or other appendage or outgrowth of the body"); American Heritage Dictionary, p. 45 (new college ed. 1979) ("to cut off (a part of the body), especially by surgery"). Given these accepted definitions, it necessarily follows that use of this term in the statute, when given the construction most favorable to the injured employee,[1] cannot be limited to the amputation of limbs absent specific provision to that effect in the statute.
Before the act was amended in 1979, permanent disability benefits were payable only for demonstrated loss of wage earning capacity. The pre-1979 act specifically referred to amputation of an "arm or leg" and benefits were limited to compensation for amputation of those limbs. § 440.15(3)(o), Fla. Stat. (1977). On the other hand, since the 1979 amendments, section 440.15(3)(a) does not contain any language limiting its benefits to the amputation to such limbs, and no other section in chapter 440 contains such limiting language. Rather, the special benefits provided under that section are payable, in addition to wage loss benefits under section 440.15(3)(b), whenever a claimant suffers the described condition coupled with any degree of permanent impairment. Accordingly, we construe the term "amputation" as used in section 440.15(3)(a), in context with the definition of permanent impairment in section 440.02(16), to mean that special benefits for "permanent impairment due to amputation" shall become payable as a consequence of the severance of any part of the body or limb that results in a permanent impairment rating. This construction will not permit the award of such benefits in every instance of removal of a hair or body tissue, as suggested by appellees in their argument.
We have found no appellate decision which requires a different construction. *305 The question decided in Rosier v. Roofing & Sheet Metal Supply Co., 41 So.2d 308, was whether the removal of a testicle met the statutory requirement of disability which, under the statute then in existence, was to be demonstrated by showing an impairment of wage earning capacity. As discussed above, the forerunner to the present statute contained entirely different language limiting benefits to the amputation of certain limbs. The decision in Carr v. Central Florida Aluminum Products, Inc., 402 So.2d 565, is not controlling because the claimant sustained an injury to his thumb which did not amount to amputation. The court was not required to construe the meaning of amputation in the context of facts similar to that now presented to us. On the contrary, referring to amputation in the sense of limb severance for the purpose of deciding the constitutionality of section 440.15(3), the court concluded that giving special treatment to claimants suffering an amputation or other special injuries described in that section was not such an unreasonable classification as to violate equal protection. Moreover, the opinion specifically noted that the special injuries listed in section 440.15(3)(a) were singled out for special treatment to eliminate disputes over the economic impact such injuries may have on wage earning capacity which were then measured by actual wage loss. We view the rationale of Carr as supporting, not contradicting, the construction we now apply in this case. Section 440.15(3)(a) simply provides a small monetary benefit payable to a claimant where the loss of a significant body part causes permanent impairment even though such loss has no demonstrably significant impact on actual wage loss as defined in section 440.15(3)(b).
Because the surgical removal of claimant's testicle was the direct result of the covered industrial accident and left claimant with a ten percent permanent impairment rating, the order denying claimant amputation benefits must be reversed. In view of this ruling, the denial of costs and attorneys fees must also be reversed. The cause is remanded for entry of an order consistent herewith.
REVERSED AND REMANDED.
WENTWORTH and NIMMONS, JJ., concur.
NOTES
[1] Norwood Shell v. Forbing, 455 So.2d 504 (Fla. 1st DCA), pet. for rev. dismissed, 459 So.2d 1041 (Fla. 1984).