WETHERELL, J.
 

 In this workers’ compensation appeal, Claimant argues that the Judge of Compensation Claims (JCC) erred in dismissing his petition for benefits on the ground
 
 *172
 
 that Appellees were not his “employer.” For the following reasons, we affirm.
 

 On July 26, 2006, Claimant went to the Workforce Alliance Career Center (the Center) for help in finding a job. The Center was operated by Workforce Alliance (Workforce), a non-profit organization created pursuant to the Workforce Investment Act of 1998. Arbor Education & Training/Rescare (Arbor) was the direct service provider responsible for administering the job assistance services provided at the Center. The Center is federally funded; there are no fees charged to the employees and employers that use its services.
 

 Claimant, who had 12 years of prior experience as a tree-trimmer, spoke to “a lady” at the Center who told him, “I have a job for you.” The lady called a phone number and spoke to someone identified in the record only as “Lewis.” Claimant then spoke with Lewis and agreed to meet him at a local gas station later that day. Claimant met with Lewis at the gas station and discussed a tree-trimming job for which Lewis was to pay him $16.00 per hour. Claimant started working for Lewis that same day, and after about four hours on the job, Claimant was injured when he fell from a tree that he was trimming.
 

 Claimant concedes that he does not have a traditional employer/employee relationship with either Workforce or Arbor. Instead, he argues that section 440.02(16)(a) defines “employer” to include “employment agencies, employee leasing companies, and similar agents who provide employees to other persons,” and that Ap-pellees are his “employer” because they are “similar agents” under the statute.
 

 The language Claimant relies on was added to the statute in 2003.
 
 See
 
 Ch. 2003^112, § 2, at 3871, Laws of Fla. It has not been construed; thus, this case presents an issue of first impression. Review of the JCC’s interpretation of this statute is
 
 de novo. See Lombardi v. S. Wine & Spirits,
 
 890 So.2d 1128, 1129 (Fla. 1st DCA 2004).
 

 Chapter 440 does not define “similar agents,” but its meaning can be gleaned from the terms that precede it — “employment agency” and “employee leasing company” — under the statutory construction doctrines of
 
 noscitur a sociis
 
 and
 
 ejusdem generis.
 
 Thus, to determine whether Workforce and Arbor are “similar agents,” we first must interpret the terms “employment agency” and “employee leasing company.”
 

 Chapter 440 does not define “employment agency” or “employee leasing company.” Absent a statutory definition,
 
 [1]
 
 it is
 
 *173
 
 appropriate to resort to dictionaries to interpret these terms in accordance with their plain and ordinary meanings.
 
 See Morris v. C.A. Meyer Paving & Constr.,
 
 516 So.2d 302, 304 (Fla. 1st DCA 1987) (adopting dictionary definitions of “amputation” where term not defined in statute).
 

 Webster’s Dictionary
 
 defines “employment agency” as “an agency whose business it is to find jobs for those seeking them or people to fill jobs that are open.”
 
 Webster’s Third New Int’l Dictionary
 
 743 (1967),
 
 available at
 
 www.merriam-webster. com/dictionary/employment% 20agency.
 
 Black’s Law Dictionary
 
 defines “employment agency” as a “[bjusiness that procures, for a fee, employment for others and employees for employers. Whether the employer or the employee pays the fee depends on the terms of the agreement.”
 
 Black’s Law Dictionary
 
 525 (8th ed. 1999). These definitions contemplate a financial arrangement between either the agency and the employer or the agency and the employee.
 

 We have been unable to find a dictionary definition of “employee leasing company.” However, employee leasing companies are regulated in sections 468.520-.535, Florida Statutes, which define such a company as being “engaged in” an arrangement “whereby a leasing company assigns
 
 its employees
 
 to a client and allocates the direction of and control over the leased employees between the leasing company and the client.” §§ 468.520(4), (5), Fla. Stat. (2006) (emphasis added). This definition contemplates the assignment of the company’s own employees to another employer.
 

 It follows from these definitions that the key features needed to be a “similar agent” under section 440.02(16)(a) include a financial arrangement between the agency and either the end employer/client or the employee, as seen in employment agencies, or the use of the entity’s own employees by the end employer/client, as seen in employee leasing companies. Here, neither Workforce nor Arbor has the requisite features to be considered a “similar agent.”
 

 First, it is undisputed that neither Workforce nor Arbor is paid by the people for whom it helps to find jobs or the entities with which they place jobseekers. Second, it is undisputed that Claimant was not an employee of either Workforce or Arbor in that he was not paid by either entity, and neither Workforce nor Arbor had any control over the terms and conditions of the ultimate employment relationship between the Claimant and Lewis, nor did they receive any direct benefits from the work that Claimant was doing for Lewis.
 

 Claimant argues that “similar agent” should include any labor exchange program that plays a role in matching employers and employees. However, this broad conception would likely impose workers’ compensation Lability on organizations that oversee job fairs, universities that assist businesses with on-campus interviews, and public websites that provide access to job postings. Surely this was not the legislature’s intent.
 
 [2]
 

 See Pearson v.
 
 
 *174
 

 Paradise Ford,
 
 951 So.2d 12 (Fla. 1st DCA 2007) (refusing to interpret a provision of chapter 440 in a manner that would lead to an absurd result not intended by the legislature).
 

 For these reasons, we affirm the JCC’s order.
 

 AFFIRMED.
 

 HAWKES, C.J., and WOLF, J., concur.
 

 [1]
 

 . The term "employment agency" is defined elsewhere in the Florida Statutes. Chapter 112 defines the term as "any person ... regularly undertaking, with or without compensation, to procure employees for an employer, including state and local employment services receiving federal assistance,” and chapter 760 defines the term as "any person regularly undertaking, with or without compensation, to procure employees for an employer or to procure for employees opportunities to work for an employer, and includes an agent of such a person.” §§ 112.044(2)(b), 760.02(8), Fla. Stat. (2006). The legislative goals of those chapters, however, differ so much from the legislative goals of chapter 440 that we cannot import these definitions into chapter 440.
 
 Compare
 
 § 112.044(1), Fla. Stat. (2006) (stating the legislative intent is “to promote employment of older persons based on ability rather than age and to prohibit arbitrary age discrimination in employment”)
 
 and
 
 § 760.01(2), Fla. Stat. (2006) (stating the legislative intent is "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status”)
 
 with
 
 § 440.015, Fla. Stat. (2006) (stating the legislative intent is "to ensure the prompt delivery of benefits to the injured worker,” and "not [to construe workers' compensation laws] lib
 
 *173
 
 erally in favor of either employee or employer”).
 

 [2]
 

 . We recognize that a report prepared by Senate staff shortly after the 2003 amendments were enacted recommended that the legislature "delete the amendments to s. 440.02(16)(a), F.S.” because of concerns that the inclusion of employment agencies and "similar agents” within the definition of employer "may have a broader sweep than intended.”
 
 See Review of the 2003 Workers’ Compensation Act,
 
 Senate Interim Project Report No. 2004-110 (Dec. 2003). The fact that the legislature apparently failed to act on this recommendation is not, as Claimant argues,
 
 *174
 
 an indication that the legislature intended the phrase “similar agents who provide employees to other persons” to broadly apply to entities such as Workforce and Arbor. While legislative inaction can be viewed as an acceptance of a prior judicial construction of a statute,
 
 see B & L Services, Inc. v. Coach USA,
 
 791 So.2d 1138, 1142 (Fla. 1st DCA 2001), the statutory language at issue in this case has not been judicially construed, and "[legislative] inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction.”
 
 Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.,
 
 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).