# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2801
_____

FLORIDA WORKERS'
COMPENSATION JOINT
UNDERWRITING ASSOCIATION,
INC.,

    Appellant,

    v.

AMERICAN RESIDUALS AND
TALENT, INC., d/b/a Art Payroll,

    Appellee.

_____

On appeal from an Order of the Office of Insurance Regulation.
David Altmaier, Commissioner.

April 30, 2018

WINOKUR, J.

Appellant, Florida Workers' Compensation Joint Underwriting Association, Inc. (FWCJUA), appeals a Final Order of the Office of Insurance Regulation (OIR) reversing FWCJUA's denial of workers' compensation coverage to Appellee, American Residuals and Talent, Inc. (ART). We affirm, but write to address FWCJUA's claim that ART is not an employer under Florida law.

## I.

FWCJUA is a self-funding, residual-market insurer created by the Legislature in order to provide workers' compensation

insurance to employers who are statutorily required to maintain such insurance, but who are unable to obtain coverage from private insurers in the voluntary market. § 627.311(5)(a), Fla. Stat. FWCJUA operates under the supervision of a nine-member Board of Governors appointed by the Financial Services Commission. § 627.311(5)(b), Fla. Stat. Additionally, FWCJUA operates in accordance with a plan of operation adopted by the Board of Governors and approved by OIR. § 627.311(5)(c), Fla. Stat.

ART is a New Hampshire corporation authorized to do business in Florida. ART specializes in talent payroll services for the motion picture, television, and radio commercial production industry. ART provides payroll and employer of record services to clients in the advertisement and entertainment business for short-term productions, such as paying wages to the talent, obtaining and covering the talent for state unemployment compensation and workers' compensation coverage for each production based on the location where the production is being filmed or produced, and withholding, paying, and remitting taxes due from the talent's compensation, as well as filing state and federal tax returns for the talent and providing W-2s to the talent.

ART first obtained workers' compensation coverage from FWCJUA in 2002. After initially representing in its application for coverage that it did not hire any of the employees for which it sought coverage, ART subsequently changed its representation in an August 2002 letter, stating that it entered into employment contracts with workers and was a temporary employment service. ART maintained coverage through FWCJUA until 2004. From 2005 through 2012, ART obtained workers' compensation coverage through the private market. In 2012, ART was unable to maintain coverage in the private market and reapplied for workers' compensation coverage through FWCJUA. In its application, ART described itself as a temporary employment service. FWCJUA issued ART a coverage policy effective September 2012.

In late 2014, FWCJUA received an application for workers' compensation insurance from Stars of David Tours, LLC (Stars of David). Stars of David is headquartered in New York and

2

intended to bring its actors and staff into Florida for a travelling theatrical performance. Stars of David was unable to obtain coverage through FWCJUA, so it contracted with ART to provide workers' compensation insurance coverage until it could get its own through FWCJUA. FWCJUA requested a copy of the Talent Payroll Support Agreement that Stars of David had with ART and determined that ART was an unlicensed employee leasing company. FWCJUA then terminated ART's workers' compensation coverage and filed a complaint with the Florida Division of Business and Professional Regulation (DBPR).

DBPR found insufficient evidence to establish probable cause that ART operated as an unlicensed employee leasing company and dismissed FWCJUA's complaint. After DBPR closed its investigation, ART reapplied to FWCJUA for coverage. FWCJUA, however, again refused to issue ART workers' compensation coverage and initiated another complaint to DBPR claiming that ART was an unlicensed employee leasing company. DBPR once again found insufficient evidence to establish probable cause that ART operated as an unlicensed employee leasing company.

In January 2016, FWCJUA again denied coverage to ART, concluding that ART did not have any direct employees and, as a result, was not an employer under Florida law. Thus, ART was not eligible for coverage through FWCJUA. ART appealed FWCJUA's eligibility determination to OIR. Representatives for FWCJUA and ART testified during the OIR hearing.

In February 2017, OIR issued its Written Report and Recommendation reversing FWCJUA's denial of workers' compensation coverage to ART. OIR found that ART, while not an employee leasing company, is an employer under Florida law, because it is a "similar agent" under section 440.02(16)(a), Florida Statutes. Additionally, OIR concluded that "the obligation of the Production companies for the provision of workers' compensation coverage is contractually transferred to ART by virtue of the Talent Payroll Support Agreement which specifically creates a co-employment relationship with the Talent selected by the production companies."

On June 13, 2017, OIR filed its Final Order adopting its Written Report and Recommendation. FWCJUA appeals.

## II.

An agency's final order may only be set aside "upon a finding that it is not supported by substantial, competent evidence in the record or that there are material errors in procedure, incorrect interpretations of law, or an abuse of discretion." *Bollone v. Dep't of Mgmt. Servs., Div of Ret.*, 100 So. 3d 1276, 1279 (Fla. 1st DCA 2012) (quoting *Hames v. City of Miami Firefighters' & Police Officers' Tr.*, 980 So. 2d 1112, 1114 (Fla. 3d DCA 2008)).

Chapter 440, Florida Statutes, governs workers' compensation insurance and defines "employer," in pertinent part, as "every person carrying on any employment . . . [and] includes employment agencies, employee leasing companies, and similar agents who provide employees to other persons." § 440.02(16)(a), Fla. Stat. "Employment," in turn, is defined as "any service performed by an employee for the person employing him or her." § 440.02(17)(a), Fla. Stat. Additionally, "employee" is defined as "any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire." § 440.02(15)(a), Fla. Stat.

An "employee leasing company" is defined as "a sole proprietorship, partnership, corporation, or other form of business entity engaged in employee leasing." § 468.520(5) Fla. Stat. Moreover, "employee leasing" is defined as "an arrangement whereby a leasing company assigns its employees to a client and allocates the direction of and control over the leased employees between the leasing company and the client." § 468.520(4), Fla. Stat. Furthermore, Chapter 468, Florida Statutes, requires that employee leasing companies be licensed.

ART conceded that it is not an employee leasing company. Therefore, the question is whether competent substantial evidence supports OIR's conclusion that ART is an employer under Florida law as a "similar agent."

## III.

FWCJUA claims that there is no competent substantial evidence to support OIR's finding that ART is a "similar agent"

4

and relies on this Court's decision in *Bolanos v. Workforce Alliance*, 23 So. 3d 171 (Fla. 1st DCA 2009). *Bolanos* concerned a petitioner appealing the dismissal of his petition for workers' compensation benefits after the Judge of Compensation Claims found that the organization that helped petitioner find employment, Workforce Alliance, was not his employer. *Id.* at 171-72. The petitioner had gone to Workforce Alliance to find employment as a tree trimmer. *Id.* at 172. Workforce Alliance informed the petitioner that an individual had an employment opportunity for him. *Id.* The petitioner then met with this individual and agreed to a tree-trimming job. *Id.* The individual, and not Workforce Alliance, paid the petitioner. *Id.* The petitioner then suffered an injury on the job and claimed that Workforce Alliance was his employer pursuant to language of section 440.02(16)(a), Florida Statutes, specifically that Workforce Alliance was a "similar agent" to an employment agency or employment leasing company. *Bolanos*, 23 So. 3d at 172.

We rejected petitioner's argument and held that the "key features" of a "similar agent . . . include a financial arrangement between the agency and either the end employer/client or the employee, as seen in employment agencies, or the use of the entity's own employees by the end/employer/client, as seen in employee leasing companies." *Id.* at 173. Because Workforce Alliance failed to satisfy either requirement, it was not petitioner's employer. *Id.*

ART is different from Workplace Alliance in both form and substance. While not in charge of interviewing, hiring, or firing the talent of its clients, ART pays the talent for its services. Moreover, ART ensures that its clients abide by local and federal employment practices as well as comply with applicable union guidelines. Additionally, ART tracks any residual payments or royalties that are due to its clients. In contrast, Workforce Alliance was essentially an employment referral service with no contractual connection to the employers that used its services. Indeed, *Bolanos* noted that Workforce Alliance was a federally funded non-profit organization that did not charge any fees to either employees looking for jobs or employers looking for manpower. *Id.* at 172.

5

Most importantly, ART entered into service contracts with its clients. These Talent Payroll Support Agreements state that ART is the "employer of record" for the talent. The contracts also provide for ART's compensation in the form of a percentage of the talent's wages and a handling fee. This is the sort of financial arrangement we contemplated in *Bolanos*. As a result, ART can be properly defined as a "similar agent" under Florida law.

Evidence in the record suggests that ART is a "co-employer" of the talent. In the September 2016 hearing, FWCJUA's senior underwriter testified that FWCJUA considered ART to be an "employer of record" or "co-employer" with its clients. FWCJUA conceded that in a "co-employer" relationship, two companies can be seen as an employer.

Furthermore, FWCJUA's senior underwriter testified that the reason for FWCJUA's cancellation of ART's coverage was that ART was not the "direct employer" of the talent. Thus, FWCJUA's argument is not that ART is not an employer, but rather based on the distinction between "direct" and "indirect" employers. This distinction, however, is nowhere to be found in Florida law or, for that matter, FWCJUA's Operations Manual.

Based on the character of ART's relationship to its clients, its contractual financial arrangements with said clients, and this Court's own precedent, ART is a "similar agent" under section 440.02(16)(a).

IV.

FWCJUA warns that workers' compensation law would be upended if companies such as ART are viewed as employers under Florida law, that such a ruling would vitiate the licensing requirement for employee leasing companies, and that run-of-the-mill payroll companies would be seen as employers. This should not occur. Employee leasing companies lease their own employees to other employers. DBPR investigated ART twice and found that ART did not operate as an unlicensed employee leasing company. Companies that lease their employees to its clients will still be required to obtain licensure pursuant to Florida law. In addition, this ruling does not exempt ART from any applicable licensure requirements if it changes its operating practices.

6

Similarly, this ruling will not open the door for payroll service companies to become employers under Florida law. As mentioned earlier, ART is a unique service provider due to the demands of entertainment companies who do short-term, out-of-state production work. ART does more than just the ministerial function of issuing paychecks to its client's employees. ART operates as the employer of record for the talent. ART assumes an employer's responsibility of paying talent and ensuring that they are provided with the insurance required under the law of the jurisdiction where they are employed, while its clients handle the creative aspect of interviewing and hiring the right talent for its productions. As conceded by FWCJUA, ART is effectively a "co-employer" of the talent.

V.

ART's contractual relationship with its clients falls within the ambit of a "similar agent" pursuant to our precedent. As a result, OIR based its ruling on competent, substantial evidence. Therefore, we affirm OIR's Final Order.

AFFIRMED.

RAY and BILBREY, JJ., concur.

––––––––––––––––––––––––––––––––

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

––––––––––––––––––––––––––––––––

Thomas J. Maida, James A. McKee, Benjamin J. Grossman, and Nicholas R. Paquette of Foley & Lardner LLP, Tallahassee, for Appellant.

Fred F. Harris, Jr., David C. Ashburn, and M. Hope Keating of Greenberg Traurig, P.A., Tallahassee, for Appellee.