# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2801
_____

FLORIDA WORKERS'
COMPENSATION JOINT
UNDERWRITING ASSOCIATION,
INC.,

    Appellant,

    v.

AMERICAN RESIDUALS AND
TALENT, INC., d/b/a Art Payroll,

    Appellee.

_____

On appeal from an Order of the Office of Insurance Regulation.
David Altmaier, Commissioner.

October 3, 2019

ON MOTION FOR REHEARING

WINOKUR, J.

We grant Appellant's motion for rehearing to the extent that we withdraw our prior opinion, and substitute the following in its place.[1] Appellant, Florida Workers' Compensation Joint Underwriting Association, Inc. (FWCJUA), appeals a Final Order of the Office of Insurance Regulation (OIR) reversing FWCJUA's

_____

[1] We deny Appellant's motion for certification of questions of great public importance and motion for rehearing en banc.

denial of workers' compensation coverage to Appellee, American Residuals and Talent, Inc. (ART). We affirm, but write to address FWCJUA's claim that ART is not an employer under section 440.02(16)(a), Florida Statutes and to clarify the scope of the Final Order under review.

I.

FWCJUA is a self-funding, residual-market insurer created by the Legislature in order to provide workers' compensation insurance to employers who are statutorily required to maintain such insurance, but who are unable to obtain coverage from private insurers in the voluntary market. § 627.311(5)(a), Fla. Stat. FWCJUA operates under the supervision of a nine-member Board of Governors appointed by the Financial Services Commission. § 627.311(5)(b), Fla. Stat. Additionally, FWCJUA operates in accordance with a plan of operation adopted by the Board of Governors and approved by OIR. § 627.311(5)(c), Fla. Stat.

ART is a New Hampshire corporation that desires to do business in Florida. ART specializes in the industry for the motion picture, television, and radio commercial production industry. ART provides payroll and other services to clients in the advertisement and entertainment business for short-term productions, such as paying wages to the talent, obtaining and covering the talent for state unemployment compensation and workers' compensation coverage for each production based on the location where the production is being filmed or produced, and withholding, paying, and remitting taxes due from the talent's compensation, as well as filing state and federal tax returns for the talent and providing W-2s to the talent. However, ART does not hire or fire the employees of the client companies and limits additional liability in its client contracts.

ART first obtained workers' compensation coverage from FWCJUA in 2002. After initially representing in its application for coverage that it did not hire any of the employees for which it sought coverage, ART subsequently changed its representation in an August 2002 letter, stating that it entered into employment contracts with workers and was a temporary employment service. Under this operating description, ART maintained coverage

2

through FWCJUA until 2004. From 2005 through 2012, ART obtained workers' compensation coverage through the private market. In 2012, ART was unable to maintain coverage in the private market and reapplied for workers' compensation coverage through FWCJUA. In its 2012 application, ART again described itself as a temporary employment service. FWCJUA issued ART a coverage policy effective September 2012.

In late 2014, FWCJUA received an application for workers' compensation insurance from Stars of David Tours, LLC (Stars of David). Stars of David is headquartered in New York and intended to bring its actors and staff into Florida for a travelling theatrical performance. Stars of David was unable to obtain coverage through FWCJUA, so it contracted with ART to provide workers' compensation insurance coverage until it could get its own through FWCJUA. FWCJUA requested a copy of the Talent Payroll Support Agreement that Stars of David had with ART. Upon review of the Agreement, FWCJUA concluded ART was not operating as a temporary employment service but as an unlicensed employee leasing company. FWCJUA then terminated ART's workers' compensation coverage and filed a complaint with the Florida Division of Business and Professional Regulation (DBPR).

DBPR found insufficient evidence to make a determination as to ART's operational status and dismissed FWCJUA's complaint. After DBPR closed its investigation, ART reapplied to FWCJUA for coverage. FWCJUA, however, again refused to issue ART workers' compensation coverage and initiated another complaint to DBPR claiming that ART was an unlicensed employee leasing company. DBPR once again found insufficient evidence to make a determination.

In January 2016, FWCJUA again denied coverage to ART, concluding that ART did not have any direct employees and, as a result, was not an "employer" under Florida law. Thus, ART was not eligible for coverage through FWCJUA. ART appealed FWCJUA's eligibility determination to OIR.

Representatives for FWCJUA and ART testified during the OIR hearing. In the Written Report and Recommendation, OIR specifically limited the issues as follows:

A.      Whether [OIR] should affirm or reverse FWCJUA's decision to deny ART's application for workers' compensation insurance coverage.

B.      Whether ART is an "employer" as defined by Florida law.

C.      Whether ART is required by Florida law to obtain workers' compensation insurance.

D.      Whether ART has employees as defined by Florida law.

E.      Whether ART is required to be licensed as an Employee Leasing Company as required by section 468.526, F.S.

In the Written Report and Recommendation, OIR reversed FWCJUA's denial of workers' compensation coverage to ART. Specifically, OIR found that ART, while not operating as an employee leasing company, is an employer under section 440.02(16)(a), Florida Statutes, as a "similar agent." Additionally, OIR concluded that the contracts between ART and its client production companies created a "co-employment" relationship with the Talent selected by the production companies.

On June 13, 2017, OIR filed its Final Order adopting its Written Report and Recommendation. FWCJUA appeals.

II.

An agency's final order may only be set aside "upon a finding that it is not supported by substantial, competent evidence in the record or that there are material errors in procedure, incorrect interpretations of law, or an abuse of discretion." *Bollone v. Dep't of Mgmt. Servs., Div of Ret.*, 100 So. 3d 1276, 1279 (Fla. 1st DCA 2012) (quoting *Hames v. City of Miami Firefighters' & Police Officers' Tr.*, 980 So. 2d 1112, 1114 (Fla. 3d DCA 2008)).

Chapter 440, Florida Statutes, establishes Florida's workers' compensation law. The definitional section of Chapter 440 defines "employer," in pertinent part, as "every person carrying on any employment . . . [and] includes employment agencies, employee leasing companies, and similar agents who provide employees to

4

other persons." § 440.02(16)(a), Fla. Stat. "Employment," in turn, is defined as "any service performed by an employee for the person employing him or her." § 440.02(17)(a), Fla. Stat. Additionally, "employee" is defined as "any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract for hire." § 440.02(15)(a), Fla. Stat. As recognized by OIR, this is a broad definition.

An "employee leasing company" is defined as "a sole proprietorship, partnership, corporation, or other form of business entity engaged in employee leasing." § 468.520(5), Fla. Stat. Moreover, "employee leasing" is defined as "an arrangement whereby a leasing company assigns its employees to a client and allocates the direction of and control over the leased employees between the leasing company and the client." § 468.520(4), Fla. Stat. Furthermore, Chapter 468, Florida Statutes, requires that employee leasing companies be licensed. ART conceded and OIR agreed that, under its current operational status, it does not meet the elements of section 468.520(4), Florida Statutes.

In satisfying its duty under section 627.311, Florida Statutes, to provide workers' compensation insurance to "employers" who are statutorily required to maintain such insurance, FWCJUA is governed by its Operations Manual. The FWCJUA Operation Manual defines "employers" as "the applicant or policyholder desiring or receiving coverage from the FWCJUA." An employer can be a sole proprietor, partnership, corporation or other *legally recognized entity* subject to the Florida Workers' Compensation Law." (Emphasis added.) Here, the narrow question is whether competent substantial evidence supports OIR's conclusion that ART is an "employer" under section 440.02 as a "similar agent."

### III.

FWCJUA claims that there is no competent substantial evidence to support OIR's finding that ART is a "similar agent" and relies on this Court's decision in *Bolanos v. Workforce Alliance*, 23 So. 3d 171 (Fla. 1st DCA 2009). *Bolanos* concerned a petitioner appealing the dismissal of his petition for workers' compensation benefits after the Judge of Compensation Claims

found that the organization that helped petitioner find employment, Workforce Alliance, was not his employer. *Id.* at 171-72. The petitioner had gone to Workforce Alliance to find employment as a tree trimmer. *Id.* at 172. Workforce Alliance informed the petitioner that an individual had an employment opportunity for him. *Id.* The petitioner then met with this individual and agreed to a tree-trimming job. *Id.* The individual, and not Workforce Alliance, paid the petitioner. *Id.* The petitioner then suffered an injury on the job and claimed that Workforce Alliance was his employer pursuant to language of section 440.02(16)(a), Florida Statutes, specifically that Workforce Alliance was a "similar agent" to an employment agency or employment leasing company. *Bolanos*, 23 So. 3d at 172.

We rejected petitioner's argument and held that the "key features" of a "similar agent . . . include a financial arrangement between the agency and either the end employer/client or the employee, as seen in employment agencies, or the use of the entity's own employees by the end/employer/client, as seen in employee leasing companies." *Id.* at 173. Because Workforce Alliance failed to satisfy either requirement, it was not petitioner's employer. *Id.*

ART is different from Workplace Alliance in both form and substance. While not in charge of interviewing, hiring, or firing the talent of its clients, ART pays the talent for its services. Moreover, ART ensures that its clients abide by local and federal employment practices as well as comply with applicable union guidelines. Additionally, ART tracks any residual payments or royalties that are due to its clients. In contrast, Workforce Alliance was essentially an employment referral service with no contractual connection to the employers that used its services. Indeed, *Bolanos* noted that Workforce Alliance was a federally funded non-profit organization that did not charge any fees to either employees looking for jobs or employers looking for manpower. *Id.* at 172.

The distinguishing factor here is that ART entered into service contracts with its clients unlike those of an employee leasing company or temporary services company. ART's Talent Payroll Support Agreements provide for ART's compensation in

6

the form of a percentage of the talent's wages and a handling fee. This is the sort of financial arrangement we contemplated in *Bolanos*. As a result, in this case ART can be defined as a "similar agent" under Florida law. However, the Agreement went further to create a contractual relationship falling between that of a temporary services company and an employee leasing company. Although ART set up what appeared to be an employee leasing company (paying wages, taxes and providing workers' compensation coverage as the listed employer) it then contractually limited its liability as only an "employer of record" with no control or involvement in the hiring and firing of employees. However, the legality of this "employer of record" relationship created by ART's Agreement was not under review below and, is therefore, not before this court.

Based on the character of ART's relationship to its clients, its contractual financial arrangements with those clients, and this Court's own precedent, OIR did not err in concluding that ART is an "employer" under section 440.02(16)(a). However, we note that the scope of the Final Order on appeal and of this opinion is limited to ART's satisfaction of the "employer" definition of section 440.02. The issue of whether FWCJUA is required, under section 627.311 and by its Operational Manual, to provide coverage to entities satisfying the definition of "employer" under 440.02(16)(a) is not before us.[2] This ruling does not define ART as an "employer" under any Florida law other than section 440.02(16)(a).

IV.

Because competent substantial evidence supports OIR's determination that ART qualifies as an "employer," the Final Order is affirmed.

AFFIRMED.

---

[2] FWCJUA's Operations Manual requires provision of coverage to employers who can be "a sole proprietor, partnership, corporation or other legally recognized entity subject to Workers' Compensation Law." This contemplates existence of an insurable interest for which FWCJUA can write coverage.

BILBREY, J., concurs; RAY, C.J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

RAY, C.J., dissenting.

Because the individuals for whom ART seeks to obtain workers' compensation insurance are not ART's employees, but are instead the employees of ART's clients, I respectfully dissent. I would reverse OIR's final order and hold that ART is not an employer entitled to workers' compensation insurance from the FWCJUA.

An "employer" for workers' compensation purposes includes "every person carrying on any employment . . . [as well as] employment agencies, employee leasing companies, and similar agents who provide employees to other persons." § 440.02(16)(a), Fla. Stat. The parties concede that ART is neither an employment agency nor an employee leasing company. Yet OIR and the majority conclude that ART meets the statutory definition of an employer because it is a "similar agent" to an employment agency or employee leasing company. I believe such an interpretation sweeps too broadly because it fails to consider that section 440.02(16)(a) includes within the definition of the term "employer" only "similar agents who provide employees to other persons."

In *Bolanos v. Workforce Alliance*, 23 So. 3d 171 (Fla. 1st DCA 2009), this Court laid the groundwork for an analysis of whether an entity constitutes a "similar agent" required to obtain workers' compensation insurance under Florida law. Since the term "similar agent" is not defined by statute, we determined that its meaning could be gleaned from the terms that precede it— "employment agency" and "employee leasing company." 23 So. 3d at 172. We relied on dictionary definitions to define "employment agency" as a "[b]usiness that procures, for a fee, employment for others and employees for employers." *Id.* at 173. And we

8

recognized that an "employee leasing company," which is defined and regulated by law, is a company engaged in "an arrangement whereby a leasing company assigns *its employees* to a client and allocates the direction of and control over the leased employees between the leasing company and the client." *Id.* (quoting §§ 468.520(4), (5), Fla. Stat.).

From these definitions, we explained that the key features necessary to constitute a "similar agent" under section 440.02(16)(a) include "a financial arrangement between the agency and either the end employer/client or the employee, *as seen in employment agencies*" or "the use of the entity's own employees by the end employer/client, *as seen in employee leasing companies*." *Id.* (emphasis added). Neither feature is present here.

ART is unlike an employment agency because it does not connect employees with employers for a fee. The hearing officer's findings of fact indicate that ART's services to its clients do not include procuring employees for the clients—ART neither interviews nor hires employees for its clients. Additionally, the financial arrangement that exists between ART and its clients for contractually assuming payroll and other services is different in kind from that contemplated for an employment agency.

Nor is ART like an employee leasing company. ART does not provide its "own employees" to its clients. Instead, the employees for whom ART seeks to obtain workers' compensation coverage are interviewed, hired, and fired only by ART's clients; perform work only for ART's clients; are directed, controlled, and supervised in their jobs only by ART's clients; and are paid by ART only in the amount provided by the clients. The fact that ART may perform some services that are "similar" to those of an employee leasing company does not make it a "similar agent" under section 440.02(16)(a) because ART does not "provide employees to other persons"—a requirement explicit in the statutory text.

Because ART is not the employer of the employees for whom it seeks to obtain workers' compensation coverage, and because ART may not, by contract, assume its clients' statutory obligation to provide workers' compensation coverage for its clients'

employees, *see Deen v. Quantum Resources, Inc.*, 750 So. 2d 616, 621 (Fla. 1999), I would reverse the order on review.

_____

Thomas J. Maida, James A. McKee, Benjamin J. Grossman, and Nicholas R. Paquette of Foley & Lardner LLP, Tallahassee, for Appellant.

Fred F. Harris, Jr., David C. Ashburn, and M. Hope Keating of Greenberg Traurig, P.A., Tallahassee, for Appellee.

William H. Rogner of Hurley, Rogner, Miller, Cox & Waranch, P.A., Winter Park, for *Amici Curiae* Florida Insurance Council, Florida Roofing & Sheet Metal Contractors Association, FRSA Self Insurers Fund, and the Florida Association of Insurance Agents.